UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-11248-GAO

VICTOR ROLF KLEIN,
Plaintiff,

v.

THOMAS M. TOCCI, PAMELA M. O'DELL, THOMAS E. DICKHAUT,
KRISTIE LADOUCEUR, and HAROLD W. CLARKE,
Defendants.

OPINION AND ORDER
July 1, 2010

O'TOOLE, D.J.

Victor Rolf Klein, an inmate at the Souza Baranowski Correctional Center ("SBCC"), has

brought suit under 42 U.S.C. § 1983 against SBCC Superintendent Thomas E. Dickhaut, SBCC

Grievance Coordinators Thomas M. Tocci and Pamela M. O'Dell, and the Massachusetts

Department of Corrections ("DOC") Grievance Coordinator Kristie Ladouceur.[1]

The complaint arises out of the May 14, 2009 suspension of Klein's ability to file

institutional grievances. Under the DOC's Inmate Grievances regulation, 103 CMR 491.01 et

seq., the Superintendent may suspend an inmate's ability to file grievances for up to six months

if the inmate has abused the grievance process. Id. 491.17(4). Filing five or more grievances in

any week or twenty or more grievances in any 180 day consecutive period may constitute an

abuse of the grievance process. Id. 491.17(2).

Klein filed twenty-two grievances between November 11, 2008 and May 11, 2009.

Pursuant to 103 CMR 491.17, O'Dell recommended to Dickhaut that Klein's ability to file

---

[1] Klein withdrew his claims against Harold W. Clarke on September 24, 2009. Klein v. Tocci, No. 09-11248 (D. Mass. Sept. 24, 2009) (dkt. no. 14) (Order).

grievances be suspended because he abused the grievance process. Dickhaut reviewed the records and on May 14, 2009, suspended Klein's ability to file grievances for 180 days. Klein appealed his suspension to Ladouceur, who reduced his suspension to ninety days. Klein's subsequently filed grievances were rejected without review.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the defendants have moved to dismiss the August 21, 2009 amended complaint.

## I.      Count I

Count I alleges that O'Dell and Dickhaut violated Klein's First Amendment right to petition the government for redress of grievances by imposing the grievance suspension. In his memorandum in opposition to the motion to dismiss, Klein recasts this claim as a facial challenge to 103 CMR 491.17.

Turner v. Safley, 482 U.S. 78 (1987), governs review of Count I whether Klein challenges the actions of prison officials or the regulation itself.[2] Inmates retain their First Amendment right to petition, Hudson v. Palmer, 468 U.S. 517, 523 (1984); however, "'incarceration brings about the necessary . . . limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system,'" O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (quoting Price v. Johnston, 334 U.S. 266, 285 (1948)). Turner sought to reconcile these competing interests. Under Turner and its progeny, inmates' constitutional rights may be restricted by prison regulations or prison officials' actions so long as the restriction is "reasonably related to legitimate penological interests." 482 U.S. at 89.

---

[2] Although Turner dealt with restrictions created by prison regulations, other circuits have applied the Turner standard when evaluating actions of prison officials that curtail inmates' constitutional rights. See, e.g., Boles v. Neet, 486 F.3d 1177, 1181 n.4 (10th Cir. 2007); Salahuddin v. Goord, 467 F.3d 263, 274 n.4 (2d Cir. 2006).

The relevant question is whether grievance suspensions under 103 CMR 491.17 are "reasonably related to legitimate penological objectives." Under Turner, courts consider four factors when evaluating the reasonableness of a restriction: (1) whether a "valid, rational connection" exists between the regulation or official action and the legitimate governmental interest put forward to justify it; (2) whether there are "alternative means of exercising the right that remain open to prison inmates;" (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally;" and (4) whether "ready alternatives" to the regulation or official action exist. See 482 U.S. at 89-91.

While the ultimate burden of persuasion as to the unreasonableness of a regulation or official action resides with the inmate, Overton v. Bazzetta, 539 U.S. 126, 132 (2003), prison officials must "put forward" the legitimate governmental interest alleged to justify the regulation, Turner, 482 U.S. at 89, and demonstrate the rational connection between the regulation or official action and the interest asserted, Josselyn v. Dennehy, 333 Fed. Appx. 581, 2009 WL 1587695, at *2 (1st Cir. June 9, 2009). Prison officials may or may not need evidence to demonstrate this connection; where, the connection is obvious, common sense can suffice. See Cal. First Amend. Coal. v. Woodford, 299 F.3d 868, 881 (9th Cir. 2002); Wolf v. Ashcroft, 297 F.3d 305, 308 (3d Cir. 2002); Amatel v. Reno, 156 F.3d 192, 196 (D.C. Cir. 1998); cf. Quinn v. City of Boston, 325 F.3d 18, 39 n.10 (1st Cir. 2003) (noting that rational basis review may be based on "'rational speculation unsupported by evidence or empirical data'") (quoting Fed. Commc'ns Comm'n v. Beach Commc'ns, Inc., 508 U.S. 307, 315 (1993)).[3]

---

[3] The First Circuit has equated the Turner reasonableness standard with rational basis review. See Josselyn, 2009 WL 1587695, at *2.

As to the first <u>Turner</u> factor—whether a "valid, rational connection" exists between the regulation or official action and the interest put forward to justify it—the defendants argue that prisons have a legitimate interest in conserving their limited resources. Klein contends that "the denial of a fundamental right . . . cannot be justified by reference to cost or convenience," but his contention rests on cases applying a strict scrutiny standard. <u>See, e.g.</u>, <u>Nadeau v. Helgemoe</u>, 561 F.2d 411, 417 (1st Cir. 1977). While cost and convenience cannot satisfy that stringent standard, cost and convenience routinely justify infringement on constitutional rights under <u>Turner</u>'s less stringent reasonableness standard. Conserving resources is a legitimate penological interest for purposes of the <u>Turner</u> analysis. <u>E.g.</u>, <u>Freeman v. Tex. Dep't of Crim. Justice</u>, 369 F.3d 854, 861 (5th Cir. 2004) ("[S]taff and space limitations, as well as financial burdens, are valid penological interests."); <u>Schroeder v. Smythe</u>, 29 F.3d 634, 1994 WL 283678, at *2 (9th Cir. June 24, 1994) (unpublished decision) ("[T]he grievance restriction was based upon legitimate penological interests in preventing a drain on prison resources . . . .").

The defendants suggest that grievance suspensions under 103 CMR 491.17 are a common sense way of serving this interest because "absent limits, an inmate could 'flood' the grievance system" forcing prison officials "to devote their time and resources to investigate and respond to that individual" "necessarily detract[ing] from the system's ability to timely respond the grievances of other inmates." (Mem. in Supp. of Defs.' Mot. to Dismiss 7-8.) Because Klein makes no attempt to refute this common sense connection but instead argues only that conserving resources does not constitute a legitimate penological interest, the first <u>Turner</u> factor is satisfied.[4]

---

[4] Massachusetts courts applying the <u>Turner</u> standard have found a valid, rational connection to exist between 103 CMR 491.17 and the allocation of prison resources. <u>Tyree v. Super., Mass. Corr. Inst., Cedar Junction</u>, 888 N.E.2d 387, 2008 WL 2338494, at *2 (Mass. App. Ct. June 10, 2008) (unpublished

As to the second <u>Turner</u> factor—whether there are "alternative means of exercising the right that remain open to prison inmates"—suspended inmates retain their rights to file emergency grievances, 103 CMR 491.17(4)(C), pursue informal resolution of non-emergency grievances, <u>id.</u> 491.07, and, as Klein demonstrates, file a federal lawsuit. Because alternative means of petitioning prison officials and the courts exist, the second <u>Turner</u> factor supports a conclusion that 103 CMR 491.17 is reasonable. <u>See</u> <u>Overton</u>, 539 U.S. at 135.

As to the third <u>Turner</u> factor—"the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"—the filing of unlimited grievances "necessarily detracts from the system's ability to timely respond to the grievances of other inmates" and would drain the prison's resources. (Mem. in Supp. of Defs.' Mot. to Dismiss 7-8.) The third <u>Turner</u> factor thus supports the defendants' position that 103 CMR 491.17 is reasonable.

As to the fourth and final <u>Turner</u> factor—"the absence of ready alternatives"—the only alternative proposed by Klein is to impose no limit on the number of grievances inmates can file. A "ready alternative" must be one that "fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests." <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 418 (1989). Although Klein's alternative would undoubtedly accommodate his and other inmates' First Amendment right to petition, that alternative would have more than a *de minimis* adverse effect on the legitimate penological interest in conserving prison resources. Imposing no limit would result in the very drain on resources that 103 CMR 491.17 seeks to prevent. Klein has therefore not

---

decision); <u>Cruthrid v. Marshall</u>, 878 N.E.2d 581, 2008 WL 43684, at *2 (Mass App. Ct. Jan. 2, 2008) (unpublished decision).

satisfied the "high standard" for demonstrating the existence of a "ready alternative," see Overton, 539 U.S. at 136; this final factor likewise supports the conclusion that 103 CMR 491.17 is reasonable.

In sum, grievance suspensions under 103 CMR 491.17 are reasonably related to legitimate penological interests. The regulation, facially and as applied to Klein, passes constitutional muster under the Turner analysis. Count I will be dismissed.

**II.**    **Count II**

Count II alleges that Tocci, O'Dell, and Dickhaut imposed the grievance suspension as retaliation for Klein's filing of grievances. A First Amendment retaliation claim under § 1983 "must be premised on an adverse act of the kind that would deter persons of 'ordinary firmness' from exercising their constitutional rights in the future." Starr v. Dube, 334 Fed. Appx. 341, 2009 WL 1782620, at *2 (1st Cir. June 24, 2009) (quoting Morris v. Powell, 449 F.3d 682, 686 (5th Cir. 2006)). A grievance suspension under 103 CMR 491.17 certainly did not deter Klein from exercising his First Amendment right to petition; he continued to file grievances and initiated this federal action. Even if Klein is a person of "extra-ordinary firmness," (Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss 22), such that his persistence should not be taken as an indicator of what persons of "ordinary firmness" might do, the facts alleged are still insufficient to state a retaliation claim. A temporary grievance suspension, occurring only after the filing twenty or more grievances in a 180 day consecutive period and leaving open alternative avenues of petitioning prison officials and the courts, would not deter persons of "ordinary firmness" from availing themselves of their First Amendment rights.

Count II will be dismissed.

### III.     Count III

Count III alleges that Tocci, O'Dell, and Dickhaut conspired to deprive Klein of his First Amendment right to petition. To state a claim for conspiracy under § 1983, the plaintiff must allege that "there [has] been besides the agreement, an actual deprivation of a right secured by the Constitution and laws." Landrigan v. City of Warwick, 628 F.2d 736, 742 (1st Cir. 1980). Klein's failure to allege a constitutional violation dooms his conspiracy claim.

Count III will be dismissed.

### IV.     Count IV

Count IV purports to assert a claim for supervisory liability against Dickhaut and Ladoucer for their participation in the alleged First Amendment violations. In his August 21, 2009 amended complaint, he alleged that Dickhaut and Ladoucer had shown "deliberate indifference to [his] First Amendment right(s)" in violation of the Eighth Amendment. (Aug. 21, 2009 Am. Compl. ¶ 53.) In a proposed October 31, 2009 amended complaint, he has omitted the reference to the Eighth Amendment, but continues to allege "deliberate indifference" to his First Amendment rights. (Oct. 31, 2009 Am. Compl. ¶ 53.) Supervisory liability requires proof of an underlying constitutional violation. Nieves v. McSweeny, 241 F.3d 46, 50 (1st Cir. 2001). Since his primary claims of constitutional deprivation are meritless for the reasons stated above, his supervisory claim fails as well.

### V.     Conclusion

For the foregoing reasons, the defendants' Motion to Dismiss (dkt. no. 21) is GRANTED. All other pending motions (dkt. nos. 23, 28, 29, 30 & 31) are DENIED.

It is SO ORDERED.

      /s/ George A. O'Toole, Jr.
United States District Judge

7